RECEIVED
IN ALEXANDRIA, LA
NOV 05 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

DANIEL LEVI,
    Appellant

CIVIL ACTION
NO. 06-2079-A

VERSUS

MICHAEL ASTRUE, COMMISSIONER
OF SOCIAL SECURITY,[1]
    Appellee

JUDGE DEE D. DRELL
MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Daniel Levi filed an application for disability insurance benefits ("DIB") on November 29, 2004, alleging a disability onset date of November 1, 1994 (Tr. pp. 29, 78), due to pain after having a spinal fusion (Tr. pp. 87-88). That application was denied by the Social Security Administration ("SSA") (Tr. p. 44).

A de novo hearing was held before an administrative law judge ("ALJ") on November 29, 2005, at which Levi appeared with an attorney, a witness, and a vocational expert ("VE") (Tr. p. 347). The ALJ found that Levi had disability insured status through December 31, 1999, and that he does not suffer from a "severe"[2]

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Commissioner Astrue is substituted for Jo Anne B. Barnhart as the appellee in this action.

[2] An impairment can be considered as not "severe" only if it is a slight abnormality which has such a minimal effect on the claimant that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Estran v. Heckler, 745 F. 2d 340, 341 (5th Cir. 1984). See also, Anthony v. Sullivan, 954 F.2d 289 (5th Cir. 1992).

impairment, despite the fact that he had lower back problems which resulted in surgery in 2001 (Tr. p. 33). The ALJ concluded that Levi was not disabled as defined in the Social Security Act at any time through the date of his decision in December 2005 (Tr. p. 33).

Levi requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 4), and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Levi next filed this appeal for judicial review of the Commissioner's decision. Levi raises the following issues for review on appeal:

> 1. The Commissioner's decision is not supported by substantial evidence because the ALJ did not apply the proper legal standard to Levi's claim.
>
> 2. The ALJ erred in not considering critical and substantial medical evidence in the record, specifically, the 1994 MRI that evidenced the disc pathology that was the source of Levi's pain.
>
> 3. The ALJ failed to correlate Levi's 1994 MRI with the subsequent medical treatment, including the 2001 surgery.
>
> 4. The ALJ failed to call upon a medical advisor as required by SSR 83-20.

The Commissioner filed a reply brief, to which Levi responded (Doc. Items 15, 16, 17). Levi's appeal is now before the court for disposition.

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether

there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical

evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## ELIGIBILITY FOR DIB

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(I), 423. Establishment of a disability is contingent upon two findings. First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423 (d)(1)(A). Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

## ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Levi (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not

disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Levi has not engaged in substantial gainful activity since November 1, 1994, that his disability insured status expired on December 31, 1999, and that he did not have a severe impairment as of the date he was last insured for disability insurance benefits. The sequential analysis thus ended at Step 2, with a finding that Levi was not disabled (Tr. p. 33).

### Summary of Pertinent Facts

At the time of Levi's administrative hearing in November 2005, Levi was 38 years old, had a high school GED, and had past relevant work as a nursing home aid (1990-1994) and a counselor in a substance abuse center (1987-1989) (Tr. pp. 88, 92). Levi also engaged in telephone and computer work for an insurance agency from July 2003 through March 2004, starting at 3 hours per day and

5

eventually working 8 hours per day, before Levi was "let go" due to his pain (Tr. pp. 111-112).

An MRI of Levi's lumbosacral spine in March 1994 showed degenerative changes in the disc at L4-5 and L5-S1 levels, a small left paracentral disc herniation at L5-S1 with a mild degree of encroachment upon the thecal sac at that level, and lumbarization of S1 (Tr. p. 247). Levi underwent physical therapy in July 1994 showed he was able to do medium heavy work, and concluded he could return to full time work in the nursing home for four hours a day at a light level, and increase to 8 hours a day at a medium physical level within four weeks, with sitting and standing as needed for pain, avoiding frequent lifting off the floor, and transferring patients with the assistance of another person (Tr. p. 313).

Levi returned to physical therapy in October 1994 with complaints of low back (level 1 pain on a scale of 1 to 10) and numbness in his left leg; he was working full duty (Tr. pp. 314-315). Levi he was placed on a comprehensive rehabilitation program to strengthen his abdominal muscles, improve his posture, and learn how to focus on function versus pain (Tr. p. 314). Levi was found to have a slight decreased lordosis in the lumbar spine, had pain after extension of his back, but not after flexion or rotation, had equal strength in both arms and both legs, had increased low back pain after working full duty for a few days, was able to do a full squat without problem, had a normal gait, could sit for about one four and stand for about 2 hours with movement, could walk a few

6

hours, needed to strengthen his abdominal muscles, and was negative for Waddell's signs (Tr. p. 315).

In May 1998, another MRI of Levi's lumbar spine showed a mild posterior protrusion of the L3-4 and L4-5 discs associated with slight hypertrophy, causing moderate, symmetrical spinal stenosis at L3-4 and L4-5, related to soft tissue (Tr. p. 246); although the facets at L4-5 and L5-S1 were mildly arthritic, there was no bone destruction or disc herniation (Tr. p. 246).

Dr. Svabek began seeing Levi in January 2001 (Tr. p. 238). In January 2001, x-rays showed some decreased disc space and height at L4-L5 and L5-S1 with some slight retrolisthesis, no significant arthritic changes, facet hypertrophy at L4-L5 and L5-S1, and some foraminal encroachment at L4-L5 and L5-S1 bilaterally (Tr. p. 240). The diagnosis was degenerative disc disease of the lumbosacral spine at L4-L5 and L5-S1 with foraminal stenosis at those levels; since Levi did not want to undergo physical therapy and was very active, he preferred to continue his daily exercises and take Vioxx for inflammation (Tr. pp. 240-241). An MRI of the lumbar spine in January 2001 showed central subligamentous disc herniation at L4-L5 with mild canal stenosis and focal herniation at L5-S1 with mild dural sac impingement (Tr. pp. 235-237). There was no nerve root impingement, his disc herniations were not significant, and his foraminal stenosis was all mild (Tr. pp. 230-231).

In February 2001, Levi was examined by Dr. John J. Fitzgerald, a pain management specialist, who noted Levi's primarily left-sided low back pain without any radiculopathy (Tr. p. 132).

7

In May 2001, Levi told his primary care physician, Dr. Steven Svabek, that he had been working as a traveling minister, he did not do a lot of heavy labor, he had not been able to function socially or physically for years, and his duties as a traveling minister were affected, but he did his own physical therapy daily and continued to take Tae Kwon Do, though his back pain limited his participation in martial arts (Tr. pp. 31-32, 186). Dr. Svabek noted that Levi did not have significant spinal stenosis and his leg pain was related to his axial back pain (Tr. p. 188). Dr. Svabek found degenerative discs at L4-5 and L5-6 (Tr. p. 188), and scheduled Levi's fusions at L4-5 and L5-6 (Tr. p. 202). On May 24, 2001, Levi underwent an lumbar interbody fusion at L4-5 and L5-6 (Tr. pp. 199-200, 202-205).

Levi testified that he injured his back at work in 1993, which resulted in two chipped vertebrae and two ruptured discs (Tr. pp. 350-351). Levi testified he immediately began physical therapy, underwent a rehab program for several months, and had pool therapy, all to no avail (Tr. p. 351). Levi testified he finally underwent a spinal fusion in May 2001 (Tr. p. 351). Levi testified that, off and on from the time of the accident in 1993 until his surgery in 2001, he was unable to walk up and down stairs, his toenails would turn black, and he would spend days lying on the floor because he could not get up (Tr. p. 352). Levi testified he had used a TENS unit for the last three years, which helps a little bit (Tr. p. 353). Levi testified he cannot stand more than about ten minutes before his legs become numb and his back starts to hurt (Tr. p.

353), and he cannot sit at all because it affects the "nerves in his legs" (Tr. p. 353). Levi testified the fusion corrected the disc problem but the scar tissue grew and hit the nerves again (Tr. p. 353).

## Law and Analysis

### Issue No. 1 - Applicable Legal Standard

First, Levi contends the Commissioner's decision is not supported by substantial evidence because the ALJ did not apply the proper legal standard to Levi's claim. Levi appears to argue that the ALJ erred in focusing on Levi's condition as of December 31, 1999, when his disability insured status expired, instead of giving more weight to Levi's testimony as to his present condition.

Title II disability insurance benefits is a wage insurance program for those whose employment is interrupted or prematurely terminated by incapacitating illness or injury. Its benefits are limited to claimants whose disabilities occurred while they were in insured status. Claimants hold insured status over that period in which they have accrued 20 quarters of social security coverage, as defined in 42 U.S.C. §413, out of the last 40 quarters. Disabilities occurring after insured status has lapsed do not provide a basis for payment of disability insurance benefits under Title II. Thomas v. Schweiker, 666 F.2d 999, 1001 (5th Cir. 1992); 20 C.F.R. 404.315. Therefore, Levi had the burden of proving he was disabled on or before December 31, 1999; Levi had to establish a disability onset date on or before December 31, 1999. Levi's medical records subsequent to December 31, 1999 were relevant only

to the extent that they reflected his medical condition on or before December 31, 1999.

SSR 83-20 prescribes the policy and procedure by which the Commissioner should determine the onset date of a disability. See SSR 83-20 (1983). Factors relevant to the determination of disability onset include the individual's allegations, the work history, and the medical evidence. SSR 83-20. See also Ivy v. Sullivan, 898 F.2d 1045, 1048 (5th Cir. 1990). The starting point of determining the onset date is the claimant's allegation as to when the disability began, and the date the disability caused the claimant to stop work is often very significant. Ivy, 898 F.2d at 1048; SSR 83-20. Nevertheless, the medical evidence is the primary element in the determination of onset of disability. The claimant's stated onset date is used as the established onset date when it is consistent with available evidence. Ivy, 898 F.2d at 1048. SSR 83-20 recognizes that with slowly progressive impairments, including mental impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Accordingly, in such cases, it is be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. Also, Spellman v. Shalala, 1 F.3d 357, 361 (5th Cir. 1993).

In the case at bar, the ALJ found Levi did not suffer from a disabling level of severity on or before December 31, 1999. The Regulations define a non-severe impairment as an impairment or combination of impairments that do not significantly limit a claimant's physical or mental ability to do basic work activities. "Basic work activities" means physical functions such as walking, standing, sitting lifting, pushing, pulling, reaching, carrying or handling, capacities for seeing, hearing, and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521, 20 C.F.R. § 416.921. Also, Anthony v. Sullivan, 954 F.2d 289 (5th Cir. 1992); Estran v. Heckler, 745 F. 2d 340, 341 (5th Cir. 1984).

In the case at bar, the ALJ relied on the Fifth Circuit's definition of severity, as set forth in Stone v. Heckler, 730 F.2d 391 (5th Cir. 1985), to find Levi's impairment was not severe, due in part to the fact that, in 2001, Levi told his primary care physician, Dr. Steven Svabek, that he had been working as a traveling minister, he did not do a lot of heavy labor, he had not been able to function socially or physically for years, and his duties as a traveling minister were affected, but he did his own physical therapy daily and continued to take Tae-Kwon-Do,[3] though

---

[3] Tae Kwon Do is a martial art and combat sport which means "the way of the feet and fist". The art in general emphasizes kicks thrown from a mobile stance, using the leg's greater reach and power to disable the opponent from a distance. Wikipedia, the free encyclopedia (2007): Taekwondo, *available at*

11

his back pain limited his participation in martial arts (Tr. pp. 31-32, 186). Dr. Svabek noted that Levi did not have significant spinal stenosis and his leg pain was related to his axial back pain (Tr. p. 188). Finally Dr. Svabek scheduled Levi's fusions at L4/5 and L5/6 (Tr. p. 188).

Levi's records from physical therapy in July 1994 showed he was able to do medium heavy work, and concluded he could return to full time work in the nursing home for four hours a day at a light level, and increase to 8 hours a day at a medium physical level within four weeks, with sitting and standing as needed for pain, avoiding frequent lifting off the floor, and transferring patients with the assistance of another person (Tr. p. 313). When Levi returned to physical therapy in October 1994 with complaints of low back (level 1 pain on a scale of 1 to 10) and numbness in his left leg; he was working full duty (Tr. pp. 314-315). Levi he was placed on a comprehensive rehabilitation program to strengthen his abdominal muscles, improve his posture, and learn how to focus on function versus pain (Tr. p. 314). Levi was found to have a slight decreased lordosis of the lumbar spine, had pain after extension of his back, but not after flexion or rotation, had equal strength in both arms and both legs, had increased low back pain after working full duty for a few days, was able to do a full squat without

---

http://www.reference.com/browse/wiki/Taekwondo.
A Korean martial art, a particularly aggressive form of karate, that utilizes punches, jabs, chops, blocking and choking moves, and especially powerful, leaping kicks. Dictionary.com Unabridged (v 1.1), Random House, Inc. (2007), *available at* http://dictionary.reference.com/browse/Taekwondo.

problem, had a normal gait, could sit for about one hour and stand for about 2 hours with movement, could walk a few hours, needed to strengthen his abdominal muscles, and was negative for Waddell's signs (Tr. p. 315).

In January 2001, Dr. Svabek noted that Levi related the following (Tr. pp. 238-239):

> "He had chronic waxing and waning of symptoms which became more constant and less pain-free. ...He is a minister, does not do a lot of heavy labor, but he has not been able to function socially or physically for years. He is a traveling minister, which really affects his duties. ...He does his own physical therapy on a daily basis, to maintain his rectus abdominis musculature. He does take Tai-Kwan-Do [sic], martial arts, but his back pain limits his participation in martial arts. He is very limber but the problem is that any time he does any kind of activities socially with his children or does any kind of physical activity or any aerobics, he gets the re-exacerbation of symptoms. Actually, several days ago he was doing aerobic exercises for about 20 minutes, which caused his last re-exacerbation of symptoms. He has been treated and has had MRIs x2 and these were all two years ago. ...All of his treatment were about two years ago. He is here for re-evaluation. He is a minister."

In February 2001, Dr. Svabek noted Levi's complaints of leg pain and significant back pain that kept him awake most of the night and prevented his normal duties and functions as a minister from being pain free (Tr. p. 219).

After evaluating Levi, Dr. Fitzgerald noted that Levi did not want to go through physical therapy again because he knew what to do, was very active, and continued to do his daily exercises (Tr. p. 240). Dr. Fitzgerald prescribed an anti-inflammatory and planned to do further MRIs (Tr. p. 241).

Levi underwent his spinal fusions in May 2001. In September

13

2002, Levi had physical therapy at Healthplex Rehabilitation Services, which noted Levi had strained his back by lifting an eighty pound bag of salt for water softener and was unable to participate in Tae Kwon Do when he began (Tr. pp. 260-261), but was able to resume his Tae Kwon Do in October 2002 with no pain during practice (Tr. p. 249). In 2003, Levi again had to stop doing Tae Kwon Do due to acute exacerbation of his low back pain; it was noted he had been using a TENS unit for two years, as well as using anti-inflammatories and muscle relaxers on a regular basis (Tr. pp. 269-277). In January 2005, Dr. Michael Dole, a physical medicine and rehabilitation specialist, evaluated Levi (then 37 years old) and noted he had recently stopped his pastoral work with Church on the Rock due to continued pain and an inability to stand more than thirty to forty minutes at a time (Tr. p. 283).

Although Levi was working as a traveling minister when his disability insurance status expired on December 31, 1999, the ALJ did not investigate whether such work (which Levi did for several years) constituted substantial gainful activity[4] which would

---

[4] A claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are. Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994). Substantial gainful activity is discussed in 20 C.F.R. §1510, as follows:
"Substantial gainful activity means work that -
(a) Involves doing significant and productive physical or mental duties; and
(b) Is done (or intended) for pay or profit;"
and in 20 C.F.R. §404.1572:
"Substantial gainful activity is work activity that is both substantial and gainful:
(a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your

mandate of finding of not disabled at Step 1. However, it is noted that Levi did not list his work as a traveling minister on his Social Security benefits application, nor do the Social Security Administration's income records reflect Levi's employment during

---

> work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
> (b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.
> (c) Some other activities. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity."
>
> In 20 C.F.R. §404.1573(d), it is stated that supervisory, managerial, advisory or other significant personal services that a claimant performs as a self-employed individual may show that the claimant is able to do substantial gainful activity; subsection (e) states that while the time a claimant spends in work is important, whether or not he is doing substantial gainful activity is not decided only on that basis. Additional considerations apply in evaluating whether a self-employed person is engaged in substantial gainful activity are set forth in 20 C.F.R. §404.1575:
>> (a) We will consider your activities and their value to your business.... We will not consider your income alone.... We consider that you have engaged in substantial gainful activity if-
>> (1) Your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood;
>> (2) Your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing; or
>> (3) You render services that are significant to the operation of the business and receive a substantial income from the business.
>
> Fowler v. Bowen, 876 F.2d 1451, 1453 (10th Cir. 1989).

that time (Tr. pp. 81, 111-119); Levi also did not mention it at his administrative hearing. However, that work apparently involved the type of physical activities Levy now says he has not been able to do since 1994 (walking, standing, driving). Apparently Levi was walking, standing and driving in 1999, as well as practicing Tae Kwon Do, a high impact martial art, despite his back pain. Even in 2001, prior to his surgery, Levi was still working as a minister and continuing with his martial arts and aerobics. Therefore, the record does not indicate that Levi's back pain was a severe impairment (affected his ability to do basic work activities, i.e. walking, standing, sitting lifting, pushing, pulling, reaching, carrying or handling, capacities for seeing, hearing, and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting, as set forth in 20 C.F.R. § 404.1521, 20 C.F.R. § 416.921), as defined in the Social Security Act.

The record simply does not support Levi's contention that, on December 31, 1999, he suffered a severe impairment due to back pain. Therefore, substantial evidence supports the Commissioner's conclusion that Levi was not disabled by back pain as of December 31, 1999. This ground for relief lacks merit.

<u>Issues Nos. 2 & 3 - 1994 MRI</u>

Next, Levi contends the ALJ erred in not considering critical and substantial medical evidence in the record, specifically, the 1994 MRI that evidenced the disc pathology that was the source of

16

Levi's pain, and in not correlating it with the other medical evidence of record.[5]

Levi correctly points out that the ALJ appears to have overlooked the 1994 MRI. Although the 1994 MRI appears to establish the fact that Levi injured his back in 1993, as alleged, it does not prove he was unable to work. As the ALJ found, the was medical evidence nearest in time to December 31, 1999, shows Levi had some back pain from mild back problems; the evidence does not show he was disabled and the fact that Levi was working proves his back problems were not "severe" within the meaning of the Social Security Act.

Since substantial evidence supports the Commissioner's finding that Levi was not disabled on December 31, 1999, this ground for relief is also meritless.

## Issue No. 4 - Medical Expert

Finally, Levi contends the ALJ failed to call upon a medical advisor as require by SSR 83-20. However, a medical advisor was not necessary to establish a disability onset date since Levi was not disabled at any time through the expiration of his disability insured status on December 31, 1999. Therefore, this issue is also meritless.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Levi's application for Social Security disability insurance

---

[5] Levi has submitted additional medical records from 1994 with his brief; they do not change the result herein.

benefits be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 5th day of November, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE